[Civ. No. 48670. Second Dist., Div. Five. Apr. 1, 1977.]

JOYCE L. FOSTER et al., Plaintiffs and Appellants, v.
MOONEY AIRCRAFT CORPORATION et al.,
Defendants and Respondents.

**COUNSEL**

Seuthe, Bourne, Weisberg & Lesser and Jeff A. Lesser for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Richard Chernick and John Loo for Defendants and Respondents.

**OPINION**

**ASHBY, J.**—Plaintiffs appeal from an order quashing service of summons on defendant Mooney Aircraft Corporation, a New Jersey corporation (hereinafter Mooney), on the ground California may not constitutionally exercise jurisdiction over Mooney.

Plaintiffs are the heirs-at-law of the decedent, Leo Foster, who died as a proximate result of an airplane crash which occurred near Filmore, California, on November 24, 1973. Named as defendants in the complaint were Mooney Aircraft Corporation, a Texas corporation

(Mooney-Texas), the manufacturer of the Mooney Mark 20 aircraft which crashed; Spray Craft Company, which repaired and reconditioned the aircraft; several named Federal Aviation Administration inspectors who inspected the aircraft; and unnamed individual and corporate Doe defendants. The complaint for wrongful death alleged that the crash occurred as a result of a structural defect which caused the wing to fall off, and sought recovery based on negligence and strict product liability.

Service of summons was made on Mooney at its principal offices in Kerrville, Texas. Mooney is a New Jersey corporation, a wholly owned subsidiary of Republic Steel Corporation. It is engaged principally in the business of manufacturing and selling aircraft, aircraft parts, and components. The complaint was amended to name Mooney as Doe corporation 1, and Mooney made a special appearance to contest jurisdiction.

Before discussing the extent of Mooney's contacts with California it is necessary to set forth the historical relation between Mooney and Mooney-Texas, the original manufacturer of the aircraft. According to the affidavit and exhibits produced by Mooney in support of the motion to quash, the aircraft was manufactured by Mooney-Texas and sold to West Texas Flying Service on July 22, 1957. Mooney has no knowledge how the aircraft came into decedent's possession. Mooney-Texas was thereafter adjudged a bankrupt. The petition in bankruptcy was filed February 17, 1969, and the court's order approving the account, discharging the trustee, and closing the estate was entered March 13, 1972.

On March 14, 1969, the assets of Mooney-Texas were purchased out of bankruptcy by American Electronics Laboratories, Inc., a Pennsylvania corporation. American Electronics did not assume the liabilities of Mooney-Texas. American Electronics thereafter operated the business through a subsidiary which it created, Mooney Aircraft Corporation, a Pennsylvania corporation (Mooney-Pennsylvania).

Thereafter the stock of Mooney-Pennsylvania was acquired by Butler Aviation International, Inc., a Pennsylvania corporation. Through its subsidiary, BAACT Corporation, a Pennsylvania corporation, Butler did business as Mooney Aircraft Corporation (Mooney-BAACT).

On August 1, 1973, Republic Steel Corporation formed Mooney, as a subsidiary under New Jersey law. On September 24, 1973, Mooney

entered into a purchase agreement with Butler and Mooney-BAACT to purchase the assets of the business. Mooney expressly did not assume any liabilities, including product liabilities.

The sale of assets was effected on October 4, 1973, the same day that Mooney was issued its certificate to do business in Texas.

According to the affidavit in support of the motion to quash, the facts relating to the extent of Mooney's contacts with California are:

1. Mooney presently has in effect two agreements for marketing centers with two California corporations, which have the nonexclusive right to sell the products of Mooney. Under these agreements, all sales must be approved and accepted at Mooney's offices in Kerrville, Texas. Airplanes are always delivered and paid for in Texas. Parts are picked up in Texas or shipped from Texas. Mooney maintains no stock of its products in California.

2. There are five Mooney service centers located in California. They are "totally unconnected and unaffiliated with" Mooney "other than that they specialize in servicing of planes manufactured by" Mooney "and prior 'Mooney' entities." Mooney's only income derived from these service centers is the incidental sale of parts by Mooney to such service centers. Such sales of parts (always f.o.b. Texas or delivered in Texas) comprise less than 1 percent of Mooney's total sales.

3. Two Mooney employees visited California shortly after the crash to assist the National Transportation and Safety Board in its investigation.

4. Some employees of Mooney have visited California for the purpose of locating, contacting, and negotiating with prospective and existing marketing centers and service centers. On those and other occasions, negotiations for sales of both airplanes and parts were conducted by these employees in California. Contracts for the marketing centers and all sales orders were executed in Kerrville, Texas.

5. Mooney has one lease agreement for a piece of production equipment with a California corporation as lessee, with a rental of $200 per month. The agreement was entered into and the equipment was delivered in Texas. At the conclusion of the lease, the property will be returned to Mooney in Texas.

6. Mooney purchases parts from several California entities, and employees of Mooney have visited two of such vendors on occasion to consult with them about production and quality control.

7. Mooney is not qualified to do business in California, has no agent appointed to receive service of process in California, does not maintain offices in California, "has no agents present in the State of California . . . for the purpose of conducting business of any description in the State of California," maintains no bank accounts nor any other property in California.

### DISCUSSION

California may exercise jurisdiction over nonresident defendants to the fullest extent consistent with the United States and California Constitutions. (Code Civ. Proc., § 410.10; *Cornelison* v. *Chaney,* 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264].) The basic test is whether the quality and nature of the defendant's activity in relation to the particular cause of action make it fair to exercise jurisdiction. The cause of action must arise out of an act done or a transaction consummated in the forum, or the defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws. (*Cornelison* v. *Chaney, supra,* at p. 148; *Buckeye Boiler Co.* v. *Superior Court,* 71 Cal.2d 893, 898 [80 Cal.Rptr. 113, 458 P.2d 57].)

In analyzing the defendant's activities we must focus upon "economic reality" rather than a mechanical checklist. (*Buckeye Boiler Co.* v. *Superior Court, supra,* at p. 903.) An enterprise obtains the benefits and protection of our laws if as a matter of commercial actuality it has engaged in economic activity within this state. (*Id.,* at p. 901.) A manufacturer engages in economic activity within a state as a matter of commercial actuality whenever the purchase or use of its product within the state generates gross income for the manufacturer and is not so fortuitous or unforeseeable as to negative the existence of an intent on the manufacturer's part to bring about this result. (*Id.,* at p. 902.) That the manufacturer deals with the residents of the state indirectly rather than directly, or requires orders to be accepted at the home office, is not determinative. (*Id.,* at pp. 902-903; *Regie Nationale Des Usines Renault* v. *Superior Court,* 208 Cal.App.2d 702, 703 [25 Cal.Rptr. 530]; *Internat. Shoe Co.* v. *Washington,* 326 U.S. 310, 314, 319 [90 L.Ed. 95, 100-101, 103-104, 66 S.Ct. 154, 161 A.L.R. 1057].)

The use of its products in California clearly generates gross income for Mooney and is not fortuitous or unforeseeable. (*Buckeye Boiler Co.* v. *Superior Court, supra,* at p. 902.) Mooney intends the sale of its products to California residents because it has agreements for marketing centers with two California corporations which have the nonexclusive right to sell its products. (See *Cosper* v. *Smith & Wesson Arms Co.,* 53 Cal.2d 77, 82-83 [346 P.2d 409].) Under these circumstances the fact that the aircraft are delivered in Texas does not negative the foreseeability of their use here. In addition, Mooney employees have on occasion negotiated for the sale of planes and parts while in California. Mooney also has agreements for the maintenance of five service centers in California which specialize in the servicing of planes manufactured by Mooney and prior "Mooney" entities. Although it is claimed that the sale of parts to these service centers is merely incidental and amounts to only 1 percent of Mooney's total sales, the existence of the service centers is also significant because the availability of service locally would be an important factor in encouraging sales of aircraft to California users.

On the other hand, it has been held that sales and sales promotion within the forum state by independent nonexclusive sales representatives are not sufficient *by themselves* to support jurisdiction, where the cause of action does not arise directly out of such activities. (*Fisher Governor Co.* v. *Superior Court,* 53 Cal.2d 222, 225 [1 Cal.Rptr. 1, 347 P.2d 1]; *Archibald* v. *Cinerama Hotels,* 15 Cal.3d 853, 864 [126 Cal.Rptr. 811, 544 P.2d 947]; *Vibration Isolation Products, Inc.* v. *American Nat. Rubber Co.,* 23 Cal.App.3d 480, 483-484 [100 Cal.Rptr. 269].) "To hold otherwise would subject any corporation that promotes the sales of its goods on a nationwide basis to suit anywhere in the United States without regard to other considerations bearing on 'the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.' Accordingly, we must look beyond defendant's sales activities in this state to determine whether jurisdiction may constitutionally be assumed." (*Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d at p. 225; citations omitted.)

The additional factors to be considered in looking beyond such sales activities are listed in *Fisher Governor Co.* v. *Superior Court, supra,* as the interest of the state in providing a forum for its residents or regulating the business involved; the relative availability of evidence and the burden of defense and prosecution in one place rather than the other; the ease of access to an alternative forum; the avoidance of

multiplicity of suits and conflicting adjudications; and the extent to which the cause of action arose out of defendant's local activities. (*Id.,* at pp. 225-226.)

Here plaintiffs are California residents and the state obviously has an interest in providing them a forum and protecting them from injuries resulting from defective products used in this state. Plaintiffs would face practical difficulties if forced to go to Texas to sue Mooney. (*Buckeye Boiler Co.* v. *Superior Court, supra,* at pp. 900, 906.) The airplane crash occurred in California and presumably the witnesses to the crash and the airplane itself are located here. (*Id.,* at p. 906.) Additional defendants in this case include Federal Aviation Administration inspectors and the entity which repaired and reconditioned the aircraft, and it is likely a multiplicity of actions and the possibility of conflicting adjudications would result if the defendants cannot all be sued in the same state. (*Id.*)

On the other hand, the cause of action does not arise directly out of Mooney's activities in this state. The aircraft in question was not manufactured by Mooney but by Mooney-Texas. Mooney's liability, if any, does not arise out of Mooney's activity in this state but out of Mooney's historical relationship to Mooney-Texas. (See *Watson's Quality Turkey Products, Inc.* v. *Superior Court,* 37 Cal.App.3d 360, 368 [112 Cal.Rptr. 345].) Our Supreme Court recently held, in *Ray* v. *Alad Corp.,* 19 Cal.3d 22 [136 Cal.Rptr. 574, 560 P.2d 3], that only in exceptional circumstances may a corporation which has purchased the assets of a prior corporation, without expressly or impliedly assuming its liabilities, be liable under strict products liability for damages caused by defects in the product manufactured by the predecessor.

However, Mooney is engaged in the same business as Mooney-Texas and, to an undisclosed extent, is doing so by use of the former assets and good will of Mooney-Texas. There is, in this sense, at least some logical connection between plaintiffs' cause of action and the present business of Mooney, which, as a matter of commercial actuality, is benefited by Mooney's California activities. (Cf. *Cornelison* v. *Chaney, supra,* 16 Cal.3d at p. 149.) We emphasize that the issue as to whether Mooney can be *liable* for damage caused by the aircraft manufactured by Mooney-Texas, under the doctrine of *Ray* v. *Alad Corp., supra,* is not before us; the sole issue here is whether California has *jurisdiction* to compel Mooney to defend against that claim in California. Upon consideration of the nature and character of Mooney's California activities in relation to the cause of action, and upon balancing the various interests involved,

we conclude that due process would not be offended by requiring Mooney to defend this action in California. (*Buckeye Boiler Co.* v. *Superior Court, supra,* at pp. 900, 907.)

The order quashing service of summons is reversed.

Kaus, P. J., and Stephens, J., concurred.

The petition of respondent Mooney Aircraft Corporation for a hearing by the Supreme Court was denied May 26, 1977.