[Civ. No. 18295. Fourth Dist., Div. One. July 23, 1979.]

DONA L. SANDERS, Individually and as Special Administratrix, etc., Plaintiff and Appellant, v.
CEG CORPORATION, Defendant and Respondent.

**COUNSEL**

Roden & White and Henry James Ahler for Plaintiff and Appellant.

Stephen R. Mulligan and Jerry M. Leahy for Defendant and Respondent.

**OPINION**

**STANIFORTH, J.**—Plaintiff Dona L. Sanders, individually and as special administratrix of the estate of James E. Sanders, sought damages for wrongful death of her husband. Mr. Sanders was employed by the County of San Diego as a hydrohammer operator. The hydrohammer overturned, caused Sanders' injuries and his subsequent death. The hydrohammer was manufactured by defendant Arrow Manufacturing Company (Arrow), a Colorado corporation. Defendant CEG Corporation (CEG) was the successor corporation to Arrow by process of merger. Summons and complaint were served on CEG by serving its corporate treasurer (James Dalby) personally in Tulsa, Oklahoma. CEG moved to quash the service of process for lack of jurisdiction over the corporation. After hearing, the superior court granted the motion. Plaintiff appeals.

FACTS

The accident resulting in Mr. Sanders' death occurred in November 1975. The hydrohammer involved in the accident was sold to the County of San Diego in 1966 by the Crook Company, a California corporation. Crook was an independent retail sales outlet for products manufactured by Arrow.

Defendant CEG was incorporated in Minnesota in 1970 and shortly thereafter acquired a controlling stock interest in Arrow. By agreement of merger with CEG (in 1970), Arrow ceased its corporate existence but CEG continued to manufacture and sell various products under the fictitious name "Arrow Manufacturing Company" until the late summer

or fall of 1974 when it ceased all manufacturing and production activities. In February 1975, CEG entered into a nonjudicial creditor's arrangement and sold substantially all of its assets to the East Moline Products Company (East Moline), East Moline, Illinois. East Moline has continued to manufacture, sell and distribute hydrohammers under the name of Arrow Manufacturing Company as a division of East Moline Metal Products Company. On the date the summons and complaint were served upon CEG (Dec. 7, 1977), CEG was engaged in no manufacturing or production activities of any kind and had no employees; CEG had no contact within the State of California and was not qualified to do business in California. It was not in fact doing business in California; CEG maintained no office or records or books within this state. CEG owned no real property or tangible personal property; it manufactured no products, performed no services and made no sales of goods in California; CEG maintained no stocks of goods, had no full-time or part-time salesmen or sales agents offering its products for sale, conducted no activities as a member of a partnership or joint venture or limited partnership in the State of California.

I

The sole issue here is whether the California courts may constitutionally assume jurisdiction over defendant CEG.

The California Code of Civil Procedure section 410.10 provides as follows: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

Section 410.10 authorizes California courts to exercise jurisdiction over a foreign corporation to the fullest extent consistent with due process. The United States Supreme Court beginning with *Internat. Shoe Co.* v. *Washington,* 326 U.S. 310, 317-318 [90 L.Ed. 95, 102-103, 66 S.Ct. 154, 161 A.L.R. 1057], and most recently by *Kulko* v. *California Superior Court,* 436 U.S. 84 [56 L.Ed.2d 132, 98 S.Ct. 1690, 1696], has defined the parameters of state power to compel nonresidents to defend a suit brought against them in a state court. Thus, section 410.10 incorporates, reaffirms the due process clause of the 14th Amendment to the federal Constitution as a limitation on any attempt of exercise of jurisdiction by a California court to enter a judgment affecting rights or interests of nonresident defendants. (*Kulko* v. *California Superior Court, supra.*)

In extrapolation of these general but controlling principles, the Judicial Council's comments to section 410.10, respecting service on foreign corporations, declare: "A state has power to exercise judicial jurisdiction over a foreign corporation which has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from such act, . . . unless the nature of the act and of the corporation's relationship to the state make the exercise of such jurisdiction unreasonable.

". . . . . . . . . . . . . . . . . . .

"A state [has] power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an omission or act done elsewhere with respect to causes of action arising from these effects, unless the nature of the effects and of the corporation's relationship to the state make the exercise of such jurisdiction unreasonable.

". . . . . . . . . . . . . . . . . ."

A distinction is made between a cause of action arising out of or in connection with a nonresident defendant's forum-related economic activity and a cause of action entirely distinct from that activity. When the cause of action *arises out of the forum-related economic activity,* the forum state will entertain jurisdiction over the nonresident defendant. An isolated act of economic activity, such as the making and performance of a contract in the forum state, may be sufficient to accord the forum state jurisdiction over the defendant when the cause of action is related to that isolated act of economic activity. (*McGee* v. *International Life Ins. Co.,* 355 U.S. 220, 223 [2 L.Ed.2d 223, 226, 78 S.Ct. 199, 201]; *Martin* v. *Detroit Lions, Inc.,* 32 Cal.App.3d 472, 475 [108 Cal.Rptr. 23].) Where, however, the cause of action is *entirely distinct from the forum-related economic activity,* the defendant cannot be sued in the forum state unless that economic activity has reached " . . . such extensive or wide-ranging proportions as to make the defendant sufficiently 'present' in the forum state . . ." to support jurisdiction over him. (*Buckeye Boiler Co.* v. *Superior Court,* 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57]; see *Perkins* v. *Benguet Mining Co.,* 342 U.S. 437, 445-447 [96 L.Ed. 485, 492-493, 72 S.Ct. 413, 418-419]; *Internat. Shoe Co.* v. *Washington, supra,* 326 U.S. 310, 317-318 [90 L.Ed. 95, 102-103].)

Here, CEG's activities in California were not extensive and wide ranging (*Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d 893,

898-899) nor "substantially continuous and systematic" (*Perkins* v. *Benguet Mining Co., supra,* 342 U.S. 437, 447-448 [96 L.Ed. 485, 493-494]) so as to justify the exercise of general jurisdiction over CEG.

■ However, with respect to a cause of action arising out of California-related economic activity, the basic test is whether the quality and nature of the defendant's activity in relation to the particular cause of action make it fair to exercise jurisdiction. The cause of action must arise out of an act done or a transaction consummated in the forum, or the defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws. (*Cornelison* v. *Chaney,* 16 Cal.3d 143, 148 [127 Cal.Rptr. 352, 545 P.2d 264].)

■ Plaintiff asserts CEG's predecessor was subject to jurisdiction of California courts because, in the first place, it engaged in an act of economic activity—manufactured, caused to be sold in California, a defective hydrohammer—with a resultant profound effect, the death of Sanders—within this state.

In measuring CEG's and CEG's predecessor's activities in this state, we are admonished to focus upon the economic reality rather than any mechanical checklist. The court in *Foster* v. *Mooney Aircraft Corp.,* 68 Cal.App.3d 887, at page 892 [137 Cal.Rptr. 694], states: "An enterprise obtains the benefits and protection of our laws if as a matter of commercial actuality it has engaged in economic activity within this state. [Citation.] A manufacturer engages in economic activity within a state as a matter of commercial actuality whenever the purchase or use of its product within the state generates gross income for the manufacturer and is not so fortuitous or unforeseeable as to negative the existence of an intent on the manufacturer's part to bring about this result. [Citation.] That the manufacturer deals with the residents of the state indirectly rather than directly, or requires orders to be accepted at the home office, is not determinative. [Citations.]" Thus, an analysis of the nonresident manufacturer's activities must focus upon "the actual economic benefit" derived from such activities. Where the manufacturer sells his products in circumstances such that it knows or should reasonably anticipate that its products will ultimately be resold in a particular state, "it should be held to have purposefully availed itself of the market for its products in that state." (*Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d 893, 902.)

From the evidence before the trial court, it is clear that the use of CEG's—and its predecessor's—products in California generated gross income for these machines. It was not fortuitous or unforeseeable that their products would be sold, distributed in California.

Since 1955, Crook has, by agreement with the manufacturer(s), been the southern California regional distributor for Arrow hydrohammers. Between 1973 and 1975, Crook was also CEG's northern California distributor. Between 1955 and 1974, Crook sold approximately 541 Arrow hydrohammers in California. In 1977, Arrow received approximately $20,000 per hydrohammer. It is clear from these facts that Arrow and CEG derive substantial economic benefit from the sale and use of their hydrohammers in California. From the scheme of distribution that they had established, it was clearly foreseeable to Arrow and CEG that its hydrohammer would be used in California. It is equally clear that Arrow's and CEG's activities are related to the plaintiff's tort action for Sanders' wrongful death. Their product, a defective hydrohammer, was charged as the cause of Sanders' death.

■ Plaintiff next contends that a corporation, similarly situated to CEG in merging with Arrow, assumed the obligation, the liabilities of the predecessor's corporation. The general rule is that "the purchaser does not assume the seller's liabilities *unless* (1) there is an express or implied agreement of assumption, (2) *the transaction amounts to a consolidation or merger of the two corporations,* (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." (*Ray* v. *Alad Corp.,* 19 Cal.3d 22, 28 [136 Cal.Rptr. 574, 560 P.2d 3]; italics added.)

In *Ray* v. *Alad Corp., supra,* Ray was injured as a result of defects in a ladder manufactured by Alad I and made a claim, as here, of strict tort liability of Alad I, under *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]. Defendant Alad Corporation (Alad II) had purchased the assets of the dissolved manufacturer Alad I and continued to manufacture the same line of products as the predecessor utilizing the same personal designs, customer lists, holding itself out to potential customers as the same enterprise.

The California Supreme Court in *Alad, supra,* reiterated that the purpose of the rule of strict tort liability was " 'to insure that the costs of injuries resulting from defective products are borne by the manufacturers

that put such products on the market rather than by the injured persons who are powerless to protect themselves.' " (*Ray* v. *Alad Corp., supra,* 19 Cal.3d 22, 30.) Justification for imposing liability on the successor corporation was provided (1) by the virtual destruction of a plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) principles of fairness requiring the successor to assume a responsibility for defective products as a burden necessarily attached to the original manufacturer's goodwill enjoyed by the successor in the continued operation of business. (*Id.,* at p. 31.) CEG is responsible under a stated ground for liability as set forth in *Alad, supra,* for CEG did in fact merge in 1970 with Arrow. Also the factual basis, the reasoning of *Alad, supra,* imposing liability on the successor manufacturer Alad II even in the absence of one of the four conditions which "typically" authorize imposition of liability are present, particularly apropos here and would authorize the California court's taking jurisdiction over CEG.

## II

CEG, however, would confess and seek to avoid the impact of the foregoing rules of law. It relies upon *Detsch & Co.* v. *Calbar, Inc.,* 228 Cal.App.2d 556 [39 Cal.Rptr. 626], and *Northern Natural Gas Co.* v. *Superior Court,* 64 Cal.App.3d 983 [134 Cal.Rptr. 850].

In *Detsch,* the appeal court said at pages 566-567: "In order that a California court may have jurisdiction over a foreign corporation, it is necessary that such corporation be doing business within this state at the time the summons is served. [Citations.] A qualification of this rule is found in Corporations Code section 6504 which provides in relevant part: 'A foreign corporation which has transacted *intrastate business* in this State and has thereafter withdrawn from business in this State may be served with process in the manner provided in this chapter in any action brought in this State *arising out of such business,* whether or not it has ever complied with the requirements of chapter 3 of this part.' (Italics added.) [Fn. omitted.] Corporations Code section 6203 defines 'transacting' intrastate business as 'entering into repeated and successive transactions of its business in this State, *other than interstate or foreign commerce.*' (Italics added.) [Fn. omitted.]

"We have found no statute similar to Corporations Code section 6504 dealing with the situation where the withdrawing corporation has

engaged solely in *inter*state commerce. Since statutory authority is a necessary basis for service upon a foreign corporation [citations] and since California law provides for service only on withdrawn corporations which have transacted *intra*state business (Corp. Code, § 6504; see generally 22 Cal.Jur.2d 467), a foreign corporation engaged solely in *inter*state commerce which ceases 'doing business' here before it is served with process, is thereby able to avoid suit in this state. [Citations.]"

*Detsch & Co.* v. *Calbar, Inc., supra,* is not controlling for Code of Civil Procedure section 411, subdivision 2, has been repealed (Stats. 1969, ch. 1610, § 12, p. 3372) and superseded by Code of Civil Procedure section 416.10. Code of Civil Procedure section 411, in effect at the time *Detsch, supra,* was decided, read in part as follows: "The summons must be served by delivering a copy thereof as follows:

"1. If the suit is against a domestic corporation: to the president or other head of the corporation, a vice president, a secretary, an assistant secretary, general manager, or a person designated for service of process or authorized to receive service of process. If such corporation is a bank, to any of the foregoing officers or agents thereof, or to a cashier or an assistant cashier thereof. If no such officer or agent of the corporation can be found within the state after diligent search, then to the Secretary of State as provided in Sections 3301 to 3304, inclusive, of the Corporations Code, unless the corporation be of a class expressly excepted from the operation of these sections.

"2. If the suit is against a foreign corporation, or a nonresident joint stock company or association, doing business in this state; in the manner provided by Sections 6500 to 6504, inclusive, of the Corporations Code." Since *Detsch,* the rules for service of process upon corporations have been changed. Section 416.10 of the Code of Civil Procedure now reads: "A summons may be served on a corporation by delivering a copy of the summons and of the complaint:

"(a) To the person designated as agent for service of process as provided by any provision in Section 202, 1502, 2105 or 2107 of the Corporations Code (or Sections 3301 to 3303, inclusive, or Sections 6500 to 6504, inclusive, of the Corporations Code as in effect on December 31, 1976 with respect to corporations to which they remain applicable);

"(b) To the president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant

treasurer, a general manager, or a person authorized by the corporation to receive service of process;

"(c) If the corporation is a bank, to a cashier or assistant cashier or to a person specified in subdivision (a) or (b); or

"(d) When authorized by any provision in Section 1701, 1702, 2110 or 2111 of the Corporations Code (or Sections 3301 to 3303, inclusive, or Sections 6500 to 6504, inclusive, of the Corporations Code as in effect on December 31, 1976, with respect to corporations to which they remain applicable), as provided by such provision."

As readily appears from the face of the new statute, the Legislature (1) made no distinction in manner of service between domestic and foreign corporations, and (2) made no express limitation on service of process on foreign corporations to "doing business in this state." The court in *Detsch & Co., supra,* observed: "It may be argued that no sound reason exists for differentiating between interstate and intrastate business in Corporations Code section 6504 . . . but the Legislature has so provided and it is not in our province to substitute new or different standards." (*Id.,* at pp. 569-570.)

These remarks must have been noted by the Legislature for section 416.10 expressly sets forth the *mode of service* upon both foreign and domestic corporations *without distinction.* Thus, we do find a statute that expressly authorizes the precise mode of service of process accomplished here.

Nor does section 2114 of the Corporations Code (formerly § 6504) operate as a limitation or condition on the modes of service of process authorized by section 416.10 of the Code of Civil Procedure. Section 2114 provides in part: "(a) A foreign corporation which has transacted intrastate business and has thereafter withdrawn from business in this state may be served with process in the manner provided in this chapter in any action brought in this state arising out of such business, whether or not it has ever complied with the requirements of this chapter." "This chapter" commences with section 2100 and includes section 2110 which provides for service of process by *modes* in addition to that found in section 416.10 of the Code of Civil Procedure. Section 2110 provides: "Delivery by hand of a copy of any process against a foreign corporation (a) to any officer of the corporation or its general manager in this state, or if the corporation is a bank to a cashier or an assistant cashier, (b) to any

natural person designated by it as agent for the service of process, or (c), if the corporation has designated a corporate agent, to any person named in the latest certificate of such corporate agent filed pursuant to Section 1505 shall constitute valid service on the corporation. A copy of the statement and designation, certified by the Secretary of State, is sufficient evidence of the appointment of an agent for the service of process." And in the same chapter, section 2111 provides for substituted· service upon the Secretary of State if the agent designated for service of process cannot be found "with due diligence."

These sections authorize additional "substituted" modes of service where the foreign corporation has been engaged in intrastate business in California but has departed before service of process is accomplished. Thus the Legislature has heeded *Detsch & Co.*'s observation, corrected an obvious void in the law. California law now authorizes the exercise of judicial jurisdiction over a foreign corporation which has done business in this state but has ceased doing business in California by the time the action is commenced with respect to a cause of action arising out of that business; and a corporate defendant, resident or nonresident, may be served by any of the alternative methods set out in the Code of Civil Procedure section 416.10. (*Ault* v. *Dinner for Two, Inc.,* 27 Cal.App.3d 145, 150-151 [103 Cal.Rptr. 572].)

## III

■ There are additional factors—beyond those discussed above— which must be explored to be certain that assumption of jurisdiction "does not offend traditional notions of fair play and substantial justice." We consider (1) California's interest in providing a forum for its residents to redress grievances occurring in California, (2) the relative availability of evidence in the various forums, (3) the burden of prosecuting and defending in California as opposed to prosecuting and defending the action elsewhere, (4) the opportunity to avoid a multiplicity of actions and conflicting adjudications by assuming jurisdiction, and (5) the extent to which a plaintiff's cause of action arises out of defendant's local activities. (*Foster* v. *Mooney Aircraft Corp.,* 68 Cal.App.3d 887, 893 [137 Cal.Rptr. 694].)

We note these facts: (1) the injury and the death occurred in California, (2) decedent was a California citizen, (3) a majority of decedent's heirs are California citizens, (4) the San Diego County Employee's Retirement System, the County of San Diego, and Crook, all parties to this litigation,

are California residents, (5) all plaintiff's witnesses are from California, and (6) the alleged defective product was sold to, delivered and is located in California. These facts compel the conclusion it would be burdensome, if not impossible, to prosecute the case elsewhere. Moreover, by assuming jurisdiction, a multiplicity of actions will be avoided, as well as potential conflicting adjudications.

Here, as in *Foster*, CEG was engaged in California in the same business as its predecessor, utilizing its predecessor's trade name, goodwill, and distribution scheme to its not insignificant economic advantage. No similar contributing "fairness" factors are cited by CEG. Basically, its position is that it will be difficult to defend the action anywhere, not just in California.

Finally, we assume for purposes of the present proceeding that Sanders' death was a result of defects in the hydrohammer manufactured by Arrow; upon this premise CEG is under our law responsible on strict tort liability concepts for its predecessor's defective product. Each of the foregoing fairness considerations impel the conclusion that California is a proper forum to litigate the tort damage issue here presented.

The order quashing service of summons on defendant CEG is reversed.

Brown (Gerald), P. J., and Cologne, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 20, 1979. Richardson J., and Manuel, J., were of the opinion that the petition should be granted.