RANDALL, Circuit Judge:
 

 Plaintiff-appellant, Mooney Aircraft Corporation, appeals a final judgment rendered by the United States District Court for the Western District of Texas, reversing an order of the Bankruptcy Court for the Western District of Texas, which had permanently enjoined defendants-appellees from pursuing tort claims in California state court against Mooney Aircraft Corporation. Finding that the bankruptcy court lacked jurisdiction to enter the injunction, we remand the case to be dismissed for lack of jurisdiction.
 

 I. FACTUAL AND PROCEDURAL BACKGROUND.
 

 On February 17, 1969, Mooney Aircraft, Inc. and Mooney Corporation, Inc. (collectively “Mooney-Texas”) filed applications for bankruptcy in the Bankruptcy Court for the Western District of Texas, pursuant to Chapter YII of the Bankruptcy Act of 1898. Bankruptcy Act of July 1, 1898, ch. 541, 30 Stat. 544, as amended,
 
 repealed by
 
 Bankruptcy Reform Act of Nov. 6, 1978, ch. 1, 92 Stat. 2549.
 
 [1]
 
 The bankruptcy schedules filed by Mooney-Texas reflect that the estate consisted 'of fixed assets, including machinery and equipment, having a book value of $1,643,363.83 and raw materials and inventory with a value of $3,322,637.00. All real property in the estate was shown as fully encumbered by deeds of trust and outstanding tax claims. The estate also included an FAA Type Certificate of undetermined value. Against these assets there were priority claims consisting of wages and taxes in the total amount of $1,215,581.00 and creditors holding secured claims in the total amount of $4,857,498.66.
 

 In addition to the priority and secured claims, there were eleven wrongful death or personal injury claims arising out of airplane accidents involving Mooney-Texas aircraft, totalling $3,300,000.00. There were also another 330 trade creditors with total claims of $465,000.00.
 

 The following day, February 18, American Electronics Laboratories, Inc. (“AEL”) offered to purchase, for $650,000.00, all of the business assets of Mooney-Texas, under and subject to the full amount of all valid liens, as defined in the offer, but free and clear of all other claims, liabilities, liens, encumbrances, mortgages and security interests. Notice of AEL’s purchase offer was communicated to some 7,000 persons holding possible claims against the bankruptcy estate. The defendants-appel-lees were not among those notified.
 

 The first meeting of creditors was held on March 13, 1969, and continued to March 14, 1969. This meeting culminated in an order by the bankruptcy, court that the purchase offer of AEL for Mooney-Texas
 
 *370
 
 be accepted by the Receiver. The court increased the required consideration to $850,000.00 and made the following findings:
 

 The Court finds that the only definite offer being made at the first meeting of creditors is from AEL, ... that the corporations have been operating at a loss under the Receivership and prior to that time for many months, and the value of the bankrupt estate as a going business is accordingly decreasing, and will continue to decrease, that the assets of the corporation have been duly appraised in accordance with competent and available means of appraisal and that such appraisal shows that the assets of the bankrupt estates are of a value less than the secured debts against the estates as sold at auction and other than as a going business, that the aircraft industry and all persons who would be reasonably expected to be interested in purchasing the bankrupt estates as a going business have had a reasonable opportunity to investigate the value of the bankrupt estates, that AEL can withdraw its offer if not accepted at this time, and has indicated that it would consider doing so, that the sale to AEL appears to make it possible for the bankrupt estates to pay all priority claims, expenses, and have some assets available for dividends to unsecured creditors, and further is the only assurance before the Court that the business which employs some 700 people will continue, and that such offer appears from all available evidence to the Court to be reasonable in amount, ...
 

 Accordingly, the court ordered the sale of the estate in accordance with the terms of the purchase offer.
 

 The purchase offer provided that AEL would take the assets “under and subject only to Valid Liens, but free and clear of all other claims, liabilities, liens, encumbrances, mortgages and security interests of [Mooney-Texas], or of the Receiver or Trustee.”
 
 [2]
 
 The purchase offer also provided that the bankruptcy court was to retain jurisdiction in order to adjudicate the validity and amounts of all liens and secured claims asserted in the bankruptcy proceeding. In October 1969, the trustee submitted an objection to the allowance of the eleven tort claims. Concerning those claims, the trustee reported:
 

 (b) There will be a very small amount of money, compared with the number of claims, available for unsecured creditors, and accordingly the extensive litigation which must be involved would substantially eliminate any amount available due to the expense of attorneys, etc. required for trial by the bankrupt estates. In fact, considering the other contingent and unliquidated suits against the bankrupt estates, it would appear almost certain that the attorneys’ fees for services, etc. which would be required in a proper defense of the claims above and other claims which are contingent and unliqui-dated which are also objected to by the Trustee, would be in excess of the total amount expected to be available for distribution to unsecured creditors.
 

 (c) Further, it is remote that any recovery made by any of the claims above, considering the expense of litigation and the amount of money available for unsecured creditors, would be substantial in any respect, and accordingly if the Trustee is directed to defend the bankrupt estates against the above claims, in any type of proceeding, he would show to the Court that after the payment of all expenses, a decision in favor of the claimants would be an empty victory, which would have the practical result of denying the trade creditors any recovery at all.
 

 
 *371
 
 The bankruptcy court subsequently disallowed the eleven negligence claims.
 
 [3]
 
 The bankruptcy estate was closed on March 13, 1972.
 

 AEL held the assets of Mooney-Texas for only nine months. On December 1, 1969, AEL sold those assets to Butler Aviation International, Inc. (“Butler”). Those assets were later purchased from a subsidiary of Butler by Republic Steel Corporation (“Republic”) on September 24, 1973. Republic formed a subsidiary New Jersey corporation, Mooney Aircraft Corporation (“Mooney-New Jersey”), which continues to hold the former assets and operate the former business of the bankrupt Mooney-Texas.
 

 In late 1971 or early 1972, Leo Foster acquired from an unknown source an aircraft which had been manufactured by Mooney-Texas. On November 24, 1973, Foster and his passenger, William Bradshaw, were killed when the aircraft lost a wing in flight and crashed in California.
 

 In November 1974, the families of Foster and Bradshaw, defendants-appellees herein, filed wrongful death actions in the Superior Court of the State of California, County of Los Angeles, against Mooney-New Jersey and others based upon two causes of action, one for negligence and the other based on strict liability in tort. Mooney-New Jersey entered a special appearance in the two California actions and moved to quash the service in the Foster case; the Bradshaw complaint was held in abeyance pending the outcome of the Foster motions. On January 6, 1976, the Superior Court quashed the service in the Foster case and an appeal was taken. The California Court of Appeals, in
 
 Foster v. Mooney Aircraft Corp.,
 
 68 Cal.App.3d 887, 137 Cal.Rptr. 694 (1977), reversed the trial court. On remand, the Foster and Bradshaw actions were consolidated and set for trial. Thereafter, Mooney-New Jersey filed a motion for summary judgment. The Superior Court granted the motion as to the negligence counts, but denied the motion as to the strict liability counts. Subsequently, all other defendants except Mooney-New Jersey were voluntarily dismissed from the suits.
 

 The theory under which the Fosters and Bradshaws attempt to hold Mooney-New Jersey strictly liable is a recent development in products liability law adopted in a small minority of states, including California. The traditional corporate law rule, still followed in a majority of jurisdictions, is that the purchase of manufacturing assets does not subject the purchaser to any of the liabilities of the seller.
 
 See, e.g., Bernard v. Kee Mfg. Co.,
 
 409 So.2d 1047 (Fla.1982);
 
 Travis v. Harris Corp.,
 
 565 F.2d 443 (7th Cir.1977). This rule of non-liability includes product liability claims arising from defective products manufactured and marketed by the selling enterprise prior to the asset purchase. 15 W. Fletcher, Cyclopedia of the Law of Private Corporations § 7123 (rev. perm. ed. 1980). However, in recent years, a minority of jurisdictions have deviated from this general rule. Where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the SRme manufacturing operation as the selling corporation, these jurisdictions allow the purchasing corporation to be held strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation.
 
 See, e.g., Ramirez v. Amsted Industries, Inc.,
 
 86 N.J. 332, 431 A.2d 811 (1981);
 
 Dawejko v. Jorgensen Steel Co.,
 
 290 Pa.Super. 15,
 
 *372
 
 434 A.2d 106 (1981). California was the first state to adopt such a rule.
 
 Ray v. Alad Corp.,
 
 19 Cal.3d 22, 560 P.2d 3, 136 Cal.Rptr. 574 (1977) (a successor corporation, which purchased the assets of a predecessor for cash, was held liable for injuries caused by a defective ladder manufactured by the asset seller, where the buyer of the assets continued to produce the same type of ladder).
 

 On November 7, 1980, as the state court case was about to proceed to trial, Mooney-New Jersey filed in bankruptcy court an application to reopen the estate of Mooney-Texas and a complaint to enjoin the state court proceedings. A temporary restraining order was issued the same day restraining the Fosters and Bradshaws from litigating their claims against Mooney-New Jersey based upon Mooney-New Jersey’s acquisition and/or ownership of any assets formerly owned by Mooney-Texas and transferred under the 1969 sale order. On March 11, 1981, the bankruptcy court entered an order permanently enjoining the Fosters and Bradshaws from pursuing their claims. In issuing the permanent injunction, the bankruptcy court found:
 

 Suits filed by the [Fosters and Brad-shaws] herein and presently pending against [Mooney-New Jersey] in the Supreme [sic] Court in and for the County of Los Angeles, California seek to impose against [Mooney-New Jersey] as a “successor” to the assets of [Mooney-Texas] products liability claims arising from the manufacture of an airplane by [Mooney-Texas] in 1958. Such imposition of “successor” liability would contravene the literal terms, purpose and intent of the Court’s Order of March 14, 1969 [to sell the assets free and clear of all claims], would seriously impair the ability of this Court to liquidate a bankrupt’s estate at the highest value and transfer title to the bankrupt’s assets free of all claims, and would alter the bankruptcy scheme among creditors.
 

 The Fosters and Bradshaws appealed the injunction to the United States District Court for the Western District of Texas. On December 23, 1982, the district court entered a judgment reversing the bankruptcy court’s order of a permanent injunction. While the district court found that the bankruptcy court had jurisdiction to enter the injunction under the Anti-Injunction Act, 28 U.S.C. § 2283 (1982), it found that the injunction was improper. The district court found that the sale free and clear in 1969 was ineffectual to disallow the claims of the Fosters and Bradshaws, because the Fosters and Bradshaws received no notice of the sale and because no provable claim existed in 1969 that could be divested. Alternatively, the district court found that even if liability for manufacture of the aircraft was erased in bankruptcy, Mooney-New Jersey may be held liable as a predecessor in title of the retailer of the aircraft, Butler.
 
 [4]
 
 The district court also examined the policy considerations underlying imposition of liability upon Mooney-New Jersey and determined that they favored such liability. Thus, the district court reversed the order of the bankruptcy court. From this judgment, Mooney-New Jersey appeals.
 

 II. JURISDICTION OF THE BANKRUPTCY COURT.
 

 We do not agree with the district court that the bankruptcy court had jurisdiction under the Anti-Injunction Act, 28 U.S.C. § 2283.
 
 [5]
 
 The Anti-Injunction Act is not a jurisdictional statute, but goes only to the granting of a particular form of equitable relief.
 
 Smith v. Apple,
 
 264 U.S. 274,
 
 *373
 
 44 S.Ct. 311, 68 L.Ed. 678 (1924);
 
 Stewart v. Dunn,
 
 363 F.2d 591 (5th Cir.1966). There are, however, three other possible jurisdictional bases under which the bankruptcy court could have entertained this motion and issued its injunction. Because we find that none of these is applicable to the case before us, we hold that the bankruptcy court was without jurisdiction to issue the injunction against the Fosters and Bradshaws.
 

 The first jurisdictional authority under which the bankruptcy court’s action might properly be cognizable is section 2(a)(8) of the Bankruptcy Act, 11 U.S.C. § 11(a)(8) (1976), and Bankruptcy Rule 515 enacted thereunder. Bankruptcy Rule 515 provides that “[a] case may be reopened on application by the bankrupt or other person to administer assets, accord relief to the bankrupt, or for other good cause.” Although neither party, in its briefs to this court, addressed (or even cited) the provision of the Bankruptcy Act or the rule applicable to the reopening of estates, Mooney-New Jersey, when asked at oral argument, claimed that the application to reopen the estate was based upon the third basis, “good cause.” The only “cause,” good or otherwise, argued by Mooney-New Jersey was that the bankruptcy court was effectuating and protecting its prior judgment. We do not decide here whether effectuating and protecting a prior judgment can serve as “good cause,” justifying the reopening of an estate. However, assuming
 
 arguendo
 
 that it may, we do not find that standard met here. Because, as we show below, the bankruptcy court’s prior judgment could not have encompassed the Fosters’ and Bradshaws’ claims, the bankruptcy court could not effectuate or protect that judgment by granting Mooney-New Jersey the relief it requested. Thus, we find that the estate was improperly reopened.
 

 The second possible jurisdictional basis is the bankruptcy court’s retention of jurisdiction in its order of sale. Mooney-New Jersey argues that the bankruptcy court had continuing jurisdiction to deal with claims such as the Fosters’ and Brad-shaws’, relying on
 
 Julian v. Central Trust Co.,
 
 193 U.S. 93, 24 S.Ct. 399, 48 L.Ed. 629 (1904). In
 
 Julian,
 
 the district court ordered a foreclosure sale free and clear of the assets of the Western North Carolina Railroad Company (“Western”) to the Southern Railway Company (“Southern”) because Western was in default of a second mortgage to Central Trust Company of New York (“Central Trust”). Central Trust also held the first mortgage which was not in default. Three years after completion of the sale, Mrs. W.A. James brought suit against Western for the wrongful death of her husband. Southern, the employer of James’ husband, was not made a party to the suit.
 

 After a jury returned a verdict for James and assessed damages, the trial court rendered judgment in favor of Western. However, on appeal to the North Carolina Supreme Court, the judgment was reversed and remanded to the trial court, with instructions to enter a judgment for the damages assessed in favor of James. The state supreme court held that the prior sale to Southern was ineffectual under North Carolina law; that Western was still an existing corporation liable to suit in state court; and that the judgment in favor of James against Western constituted a lien upon the property of Western that was superior to the first or second mortgages mentioned in the foreclosure suit. James then attempted to execute her judgment by attaching the property of Western. The sheriff levied the attachment upon the property and advertised the same for sale. Southern and Central then sought an injunction in federal district court against the sale of the property. The district court granted the injunction and the Fourth Circuit affirmed. James appealed to the United States Supreme Court, contesting the district court’s right to issue the injunction. The Supreme Court found that the district court had, in its order of sale, specifically retained jurisdiction “to determine what liens or claims should be charged upon the title conveyed by the court ....” 193 U.S. at 112, 24 S.Ct. at 407. Thus, the Court held that,
 
 *374
 
 “[t]he ... court, in protecting the purchaser under such circumstances, was acting in pursuance of the jurisdiction acquired when the foreclosure proceedings were begun _ We think ... that the [district] court, by the order made, retained jurisdiction of the case to settle all claims against the property_” 193 U.S. at 112-13, 24 S.Ct. at 407. Mooney-New Jersey asserts that, because the purchase offer — the terms of which are incorporated in the bankruptcy court’s order of sale — contained a clause retaining jurisdiction, the bankruptcy court was exercising its continuing jurisdiction over the Mooney-Texas assets.
 

 Julian
 
 simply does not support Mooney-New Jersey’s argument. The Court in
 
 Julian
 
 based its determination that the district court had retained jurisdiction on a clause which provided that the district court retained jurisdiction “to determine what liens or claims should be charged upon the title conveyed by the Court .... ” The clause in the purchase offer upon which Mooney-New Jersey bases its argument declares that the bankruptcy court “shall retain jurisdiction and adjudicate the validity and amount of every lien and secured claim asserted in the bankruptcy proceeding _” The purchase offer clause is. not nearly so broad a retention of jurisdiction as in
 
 Julian.
 
 This retained jurisdiction could not extend to the claims of the Fosters and Bradshaws, because those claims were not liens or secured claims, and were not asserted in the bankruptcy proceeding. Nor, indeed, could they have been in view of the fact that the accident that gave rise to the claims had not yet occurred. Thus, we find that the bankruptcy court did not retain jurisdiction over the Fosters’ and Bradshaws’ claims.
 

 The third possible basis for the bankruptcy court’s jurisdiction is the ancillary proceeding doctrine of
 
 Local Loan Co. v. Hunt,
 
 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Mooney-New Jersey argues that the bankruptcy court is authorized to issue the injunction against the Fosters and Bradshaws by the third exception to the Anti-Injunction Act — the “in order to protect or effectuate its judgment” exception. While, as we have pointed out above, the Anti-Injunction Act is not a grant of jurisdiction, no independent basis of jurisdiction is required for a federal court to entertain an application to enjoin relitigation in state court. The jurisdiction that the federal court had when it entered its original judgment is enough to support its issuance of an injunction.
 
 See
 
 17 C. Wright & A. Miller, Federal Practice and Procedure § 4276, at 345 (1978). As the Supreme Court said in
 
 Local Loan Co. v. Hunt, supra:
 

 That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled. And this, irrespective of whether the court would have jurisdiction if the proceeding were an original one. The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause, and may be maintained without regard to the citizenship of the parties or the amount involved ....
 

 292 U.S. at 239, 54 S.Ct. at 697 (citations omitted). However,
 
 Hunt
 
 does not support jurisdiction of a court to issue “an injunction to enforce an order the bankruptcy court did not make.”
 
 Matter of Federal Shopping Way, Inc.,
 
 717 F.2d 1264, 1270 (9th Cir.1983) (where prior judgment of bankruptcy court did not encompass claims sought to be enjoined,
 
 Hunt
 
 does not support jurisdiction).
 

 The bankruptcy court, in issuing the injunction in this case, thought that it was protecting its prior order of a sale free and clear of all claims and liabilities, which it deemed to have barred the Fosters’ and Bradshaws’ claims. We do not agree. The bankruptcy court’s prior judgment did not, and indeed could not, affect the Fosters’ and Bradshaws’ claims; thus, an injunction against the California state court proceed
 
 *375
 
 ings could not in any way protect or effectuate that prior judgment.
 

 The Fosters and Bradshaws urge that the bankruptcy court’s prior judgment did not affect their claims because they did not receive notice prior to the proposed sale. They argue that due process requires that they be given notice prior to a deprivation of their property right (their claim). We recognize that a sale free and clear is ineffective to divest the claim of a creditor who did not receive notice,
 
 Factors and Traders Insurance Co. v. Murphy,
 
 111 U.S. 738, 4 S.Ct. 679, 28 L.Ed. 582 (1884);
 
 Ray v. Norseworthy,
 
 90 U.S. (23 Wall.) 128, 23 L.Ed. 116 (1874);
 
 In re Wiltse Brothers Corp.,
 
 361 F.2d 295 (6th Cir.1966);
 
 see generally
 
 4B Collier on Bankruptcy § 70.99[2] (14th ed. 1978), and that, were it necessary to reach this question, this lack of notice might well require us to find that the bankruptcy court’s prior judgment was ineffective as to the Fosters’ and Bradshaws’ claims. But, this argument raises another, even more basic question which leads us to the same result. The Fosters and Bradshaws did not even have a claim at the time of the bankruptcy court’s order of sale.
 
 [6]
 
 There was no property right to be deprived; by the same token, there was no claim to be divested. The Fosters’ and Bradshaws’ claims did not arise until more than five years after the sale and more than a year after the bankruptcy estate was closed. The bankruptcy court could not sell free and clear of claims asserted by the victims of an accident which did not occur until five years later. Consequently, the injunction sought by Mooney-New Jersey against the California state court proceedings is entirely unnecessary to protect or effectuate the bankruptcy court’s prior judgment, because that judgment was ineffective as to the Fosters’ and Bradshaws’ claims.
 
 [7]
 

 Accordingly, we find that the bankruptcy court lacked jurisdiction over Mooney-New Jersey’s complaint. Because we determine that no jurisdiction exists, we do not find it necessary to address the merits of Mooney-New Jersey’s appeal.
 

 The case is remanded to the district court; we direct the district court to remand to the bankruptcy court with instructions to dismiss for want of jurisdiction. Costs shall be borne'by appellant.
 

 REMANDED with instructions to dismiss.
 

 [1]
 

 . The original bankruptcy in this case arose under the Bankruptcy Act of July 1, 1898, ch. 541, 30 Stat. 544 (formerly codified al 11 U.S.C. §§ 101 et scq. (1976)),
 
 repealed by
 
 Bankruptcy Reform Act of Nov. 6, 1978, ch. 1, 92 Stat. 2549. The 1978 Act provides that cases commenced under the former Bankruptcy Act and matters relating thereto arc to be determined by the former Act. Pub.L. No. 95-598, tit. IV, § 403(a), 93 Stat. 2549, 2683 (1978). Accordingly, the provisions and principles discussed in this opinion refer to the former Act. For simplicity, all subsequent citations to the former Act will be made to the appropriate section contained in the 1976 version of the United States Code.
 

 [2]
 

 . "Valid Liens” is defined in paragraph 1(g) of the purchaser offer to include, "[l]iens against the assets of [Mooney-Texas], but only to the
 
 *371
 
 extent such liens are valid and enforceable against the Trustee.”
 

 [3]
 

 . A bankruptcy court may disallow a claim under section 57(d) of the Bankruptcy Act, which provides in pertinent part:
 

 [A]n unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this title.
 

 11 U.S.C. § 93(d) (1976).
 

 [4]
 

 . This alternative holding by the district court appears to be based upon an erroneous factual conclusion, not supported by the record, that Butler was the seller of the aircraft. The record does not reflect this; the record merely reflects that no one knows from whom Foster purchased the aircraft. The Fosters and Bradshaws do not pursue this argument on appeal.
 

 [5]
 

 . The Anti-Injunction Act provides:
 

 A Court of the United Stales may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 

 28 U.S.C. § 2283 (1982).
 

 [6]
 

 . "Claim" was not defined for purposes of Chapter VII in the Act. The term was only used with the concept of provability in section 63 of the Act to limit the kinds of debts that were payable in a bankruptcy case.
 
 See
 
 S.Rcp. No. 989, 95th Cong., 2d Sess. 21 (1978). The Fosters and Bradshaws did not have a provable claim.
 
 See
 
 11 U.S.C. § 103 (1976). The Code defines "claim” as "any right to payment." 11 U.S.C. § 101(4) (1982). The redactors of the Code recognized this as a much broader definition than existed under the Act. H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. We need not address the question whether, under the Code, the Fosters and Bradshaws would have a claim.
 

 [7]
 

 .
 
 Jacksonville Blow Pipe Co. v. Reconstruction Finance Corp.,
 
 244 F.2d 394 (5th Cir.1957), cited by Mooney-New Jersey, does not support jurisdiction over Mooney-New Jersey’s claim. The claimant in
 
 Jacksonville Blow Pipe,
 
 was the holder of an existing secured claim against a portion of the transferred property, received notice of the sale free and clear and was, in fact, a participant in the proceedings authorizing the sale.