In the Matter of **WILTSE BROTHERS CORPORATION, Bankrupt.**

**WHITEHEAD & KALES COMPANY,** Appellant,

v.

**William H. DEMPSTER, Trustee,** Appellee.

No. 16301.

United States Court of Appeals Sixth Circuit.

May 19, 1966.

296

Allan B. Schmier, Detroit, Mich., for appellant, Schmier & Schmier and William B. Giles, Detroit, Mich., on the brief.

Milton Roberts and Joseph S. Radom, Detroit, Mich., for appellee, Janet E. Kinnane, Bay City, Mich., on the brief.

Before EDWARDS and CELEBREZZE, Circuit Judges, and KENT *, District Judge.

CELEBREZZE, Circuit Judge.

Wiltse Brothers Corporation, hereinafter referred to as Bankrupt, agreed to fabricate and manufacture for Reserve

* Honorable W. WALLACE KENT, Chief Judge, United States District Court, Western District of Michigan, sitting by designation.

Mining Company, hereinafter referred to as Reserve, certain large and heavy steel fabricated pieces. On March 29, 1962, Bankrupt purchased from Whitehead & Kales Company, hereinafter referred to as Whitehead, certain steel angles which were incorporated into the large steel pieces being fabricated for Reserve.

On June 22, 1962, the Bankrupt filed its voluntary petition in bankruptcy. At this time the steel fabrications were in the possession of the Bankrupt, and the sum of $24,000. remained due from Reserve. The Receiver negotiated with Reserve to buy the steel fabrications for the balance due under its contract, less the cost of completing the job. The sum agreed upon was $18,173.30. From the Receiver's point of view, this agreement was desirable since the cost of storing the fabrications was high, and unless the fabrications could be sold to Reserve, the property being of limited use, would be sold for scrap.

Believing a quick sale of this property was desirable for the Bankrupt's estate, the Receiver, now Trustee, turned over to Reserve the fabricated pieces, and received payment of $18,173.30. On the same day, July 26, 1962, the Receiver filed a petition seeking approval of the sale free of liens, with liens, if any, to follow the proceeds of sale. On July 27, 1962, an ex parte order approved the sale.

At this time the amount due Whitehead from the Bankrupt was $9,100. No lien had been filed by Whitehead until August 3, 1963, when Whitehead filed a lien in the State of Minnesota against the real property of Reserve. This lien was filed after the Bankrupt filed its voluntary petition in bankruptcy.[1] An order to show cause was issued directing Whitehead to show cause why its lien right should not be transferred to the proceeds of sale of the steel fabrications. Whitehead objected to the jurisdiction of the Bankruptcy Court to summarily determine the lien rights of Whitehead for the reason that the Bankrupt did not have possession, actual or constructive, of the property against which Whitehead sought to impress its lien, namely, the real property of Reserve.

The Referee held the Bankruptcy Court had summary jurisdiction over Whitehead, and that it could order the transfer of the lien rights of Whitehead against real property in Minnesota to the proceeds received from the sale of the property to Reserve. The Referee further enjoined Whitehead from further action in its foreclosure suit against Reserve in Minnesota. The District Court affirmed the Referee's order, and Whitehead appeals.

The Bankruptcy Court may, in the best interest of administering the estate, sell the Bankrupt's property free of all claims, liens and encumbrances if the property to be sold was in the actual or constructive possession of the Bankrupt. 4 Collier on Bankruptcy, Section 70.97[2].

11 U.S.C., Section 94(a) provides in part that the ten days' notice of a proposed sale need not be given if the Bankruptcy Court, upon cause shown, shortens such time or orders immediate sale without notice to creditors. 4 Collier on Bankruptcy, Section 70.98[2]. Where the property is to be sold free of encumbrances, notice to lienors is required. 3 Collier on Bankruptcy, Section 58.09.

Here, however, the procedure employed by the Receiver in selling bankrupt property without formal notice and without prior authorization of the Bankruptcy Court was plainly in violation of

---

1. This lien was filed under Minnesota Statutes Annotated, 514.01, which provides in part as follows:

"Whoever contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery for any of the purposes hereinafter stated, whether under contract with the owner of such real estate or at the instance of any agent, trustee, contractor or subcontractor of such owner, shall have a lien upon the improvement, and upon the land on which it is situated or to which it may be removed, for the price or value of such contribution."

the statute. And the Referee's order of July 27, 1962, approving said sale *nunc pro tunc* might well have been vulnerable to attack, particularly on a showing of abuse, collusion or fraud. In re Park Distributors, Inc., 176 F.Supp. 38 (S.D. Cal.1959); In re Fee Bros., 36 F.Supp. 995 (W.D.N.Y.1941), aff'd sub. nom., Hover v. Genesee Valley Trust Company, 123 F.2d 813 (C.A.2, 1941).

But this appeal is not taken from the 1962 order approving the sale, nor does it seek to set it aside. This sale was not without actual (as distinguished from formal) notice to Whitehead. In fact, it originated with Whitehead's suggestion. Whitehead has never asserted any unfairness in the fact of the sale or in its terms.

The only legal issue presented to this Court is Whitehead's claim that under Minnesota law it had prior lien rights which were beyond the jurisdiction of the Bankruptcy Court to transfer to the proceeds of the sale. The only relief sought by Whitehead is vacation of the District Court's order affirming the Referee's decision of January 18, 1964, transferring such lien and finding jurisdiction to determine the validity and priority of Whitehead's lien.

There is substantial merit to the argument that Whitehead should on this record be held to be estopped to deny the jurisdiction of the Bankruptcy Court to sell this property free and clear of all liens. It was Whitehead's letter of July 3, 1962, to the Trustee which apparently initiated the sale of the 29 tons of rolled angles. That letter said in part:

"Wiltse Brothers Corporation is indebted to Whitehead & Kales Company in the amount of $9,100.00 (invoice enclosed covering approximately 29 tons of rolled angles furnished in May on their Purchase Order #5957. These angles were fabricated per specifications for a conveyor system under Wiltse's contract with the Reserve Mining Company, Silver Bay, Minnesota. As such, these angles have no value unless used in the structure for which they were designed.

"We are interested in determining what amount of these angles, if any, are still in the Wiltse plant. It could result to the mutual advantage of all concerned if this material could still be used in the completion of Reserve's project, and we understand you have already had some contact with them in this regard."

The Bankruptcy Referee's findings of fact include the following:

"The receiver testified that Mr. Powell, Treasurer of Whitehead & Kales, agreed that it would be to the mutual advantage of everyone if the fabricated machinery were purchased by Reserve Mining and subsequently agreed to send the letter required by Reserve Mining agreeing to transfer its lien, if any, to the proceeds of the sale. In reliance on the agreement, the receiver contacted Reserve Mining which hired flatcars and power cranes to go to the job site and load the machinery for shipment to Reserve Mining.

"On July 25, the receiver was contacted by Reserve Mining concerning the letters of waiver. Receiver advised Reserve Mining that he had received the letter from Industrial Resources but that he had not as yet received the letter from Mr. Powell of Whitehead & Kales. On July 25, the receiver called Mr. Powell regarding the letter and reached him in the late afternoon and was advised for the first time that the letter would not be forthcoming, on the advice of counsel."

Obviously there was reliance upon Whitehead's previously expressed attitudes prior to final refusal of a letter of waiver on advice of counsel.

But assuming that such refusal preserved Whitehead's right to object to the Bankruptcy Court's jurisdiction over its lien, we feel that this appeal must ultimately be denied on the merits.

Relying upon the liberal mechanic's lien law of Minnesota,[2] Whitehead claims a lien upon Reserve Mining's real estate in Minnesota. Whitehead asserts that under Minnesota law, this lien vested when it fabricated the angles and turned them over to the Bankrupt for installation upon Reserve Mining's land.[3] Whitehead claims that the Bankruptcy Court had no jurisdiction over its lien because even though it plainly had possession of the steel fabrications, it had no jurisdiction over the real estate of Reserve Mining.

▪▪ The date of bankruptcy is the date of cleavage and the rights of creditors thereafter are governed by the Bankruptcy Act. The Bankruptcy Court, having jurisdiction over the property of the Bankrupt, and having jurisdiction to order the sale of the Bankrupt's property and to determine the nature, extent and validity of liens asserted against the proceeds, had jurisdiction to enjoin a lienholder from attempting to assert his lien against property in the hands of a purchaser who has acquired from the Bankruptcy Court a title free and clear of liens and encumbrances. As stated by Mr. Justice Brandeis in Van Huffel v. Harkelrode, 284 U.S. 225, 227–228, 52 S.Ct. 115, 116, 76 L.Ed. 256 (1931):

"First. The present Bankruptcy Act (July 1, 1898, 30 Stat. 544, c. 541), unlike the Act of 1867, contains no provision which in terms confers upon bankruptcy courts the power to sell property of the bankrupt free from encumbrances. We think it clear that the power was granted by implication. Like power had long been exercised by federal courts sitting in equity when ordering sales by receivers or on foreclosure. First National Bank v. Shedd, 121 U.S. 74, 87, [7 S.Ct. 807, 30 L.Ed. 877]; Mellen v. Moline Malleable Iron Works, 131 U.S. 352, 367 [9 S.Ct. 781, 33 L.Ed. 178]. The lower federal courts have consistently held that the bankruptcy court possesses the power, stating that it must be implied from the general equity powers of the court and the duty imposed by § 2 of the Bankruptcy Act to collect, reduce to money and distribute the estates of bankrupts, and to determine controversies with relation thereto.

"No good reason is suggested why liens for state taxes should be deemed to have been excluded from the scope of this general power to sell free from encumbrances. Section 64 of the Bankruptcy Act grants to the court express authority to determine 'the amount or legality' of any tax. To transfer the lien from the property to the proceeds of its sale is the exercise of a lesser power; and legislation conferring it is obviously constitutional. Realization upon the lien created by the state law must yield to the requirements of bankruptcy administration. Compare In-

2. See footnote 1. Minnesota Statutes Annotated, Section 514.05 provides:

"When lien attaches. All such liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. As against a bona fide purchaser, mortgagee, or encumbrancer without notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground, but a person having a contract for the furnishing of labor, skill, material, or machinery for such improvement, may file for record with the register of deeds of the county within which the premises are situated, or, if claimed under section 514.04, with the secretary of state, a brief statement of the nature of such contract, which statement shall be notice of his lien for the contract price or value of all contributions to such improvement thereafter made by him or at his instance."

3. National Lumber Co. v. Farmer & Son, Inc., 251 Minn. 100, 87 N.W.2d 32 (1957); Lamoreaux v. Andersch, 128 Minn. 261, 150 N.W. 908, L.R.A.1915D, 204 (1915); Thompson-McDonald Lumber Co. v. Morawetz, 127 Minn. 277, 149 N.W. 300, L.R.A.1915E, 302 (1914); Hickey v. Collom, 47 Minn. 565, 50 N.W. 918 (1891) appear to support Whitehead's position.

**300**

ternational Shoe Co. v. Pinkus, 278 U.S. 261 [49 S.Ct. 108, 73 L.Ed. 318]; Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734 [51 S.Ct. 270, 75 L.Ed. 645]; Straton v. New, 283 U.S. 318 [51 S.Ct. 465, 75 L.Ed. 1060]."

See also Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941); 28 U.S.C. § 2283; Reconstruction Finance Corporation v. Jacksonville Blow Pipe Company, D.C., 143 F.Supp. 601, aff'd 244 F.2d 394 (C.A. 5, 1957); Arizona Power Corporation v. Smith, 119 F.2d 888 (C.A. 9, 1941); and 4 Collier on Bankruptcy, p. 1829, Section 70.97[3].

■ The Bankruptcy Court has jurisdiction to enjoin proceedings in other courts commenced after the filing of the petition in bankruptcy which interfere with the proper administration of the Bankrupt's estate. 1 Collier on Bankruptcy, Sections 2.62 and 2.63.

■ After the petition in bankruptcy was filed, and after the steel fabrications were sold to Reserve, Whitehead filed its lien against the real estate of Reserve located in Minnesota. If the Bankruptcy Court had jurisdiction here to enjoin a foreclosure action against the property sold by the Court free of liens and encumbrances, certainly the Bankruptcy Court had jurisdiction to enjoin a foreclosure action to sell real estate which was benefited by property sold by the Bankruptcy Court free of all liens and encumbrances. Otherwise, Reserve would not have purchased the steel fabrication if their real estate was subject to a lien, and the order of sale free of liens would have been meaningless. The Bankruptcy Court would then have been prevented from properly administering the Bankrupt's estate.

■ By its purchase from the Receiver, Reserve was granted the same protection against liens that would inure to any other purchaser. The fact that the purchaser in a bankruptcy proceeding is the same as the original contractor, in the absence of fraud or collusion, grants no less protection.

■ Accepting the assumption of a valid lien pre-existing bankruptcy, there is no doubt that the Minnesota courts have concurrent jurisdiction in relation to this lien. But here the Federal District Court in a bankruptcy proceeding acquired jurisdiction over both the fabricated material which was the source of the lien and the lienors, including Whitehead, prior to any State proceeding. Both practicality and equity require us in these circumstances to approve the Federal Court's full exercise of that jurisdiction.

For the foregoing reasons the judgment of the District Court is affirmed.