In re ALL AMERICAN OF ASHBURN, INC., Debtor.

In re ALL AMERICAN HOUSING OF ALABAMA, INC., Debtor.

In re FAMILY HOMES SALES CENTER INC., Debtor.

AMERICAN LIVING SYSTEMS, Plaintiff,

v.

Paul BONAPFEL (Not Individually but Solely in his Capacity as Trustee), Sharon L. Lambert, Jennifer L. Lambert, James Harward, and Holiday Homes of Georgia, Inc., Defendants.

Bankruptcy Nos. 83–03719A, 83–03720A and 83–04266A.
Adv. No. 85–0599A.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 7, 1986.

See also, Bkrtcy., 40 B.R. 104.

David G. Bisbee, Bisbee, Parker & Rickertsen, Atlanta, Ga., for plaintiff.

Eugene Brooks, Michael K. Mixon, Middleton & Anderson, P.C., Savannah, Ga., and Carolyn Berg, The Keenan Law Firm, Atlanta, Ga., for Sharon Lambert, Jennifer Lambert, James Harward and Holiday Homes of Georgia, Inc.

Paul W. Bonapfel, Palmer, Lamberth, Bonapfel & Cifelli, P.A., Atlanta, Ga., for trustee.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

The plaintiff, American Living Systems, Inc. ("ALS"), initiated this adversary proceeding against the defendants, Paul Bonapfel ("Trustee"), as Trustee for All American of Ashburn, Inc. ("All American"), Sharon and Jennifer Lambert ("Lamberts"), James Harward and Holiday Homes of Georgia, Inc., on August 12, 1985, by filing a complaint for injunctive and declaratory relief, rescission, and for enforcement of this Court's Orders. The Lamberts filed their answer on September 13, 1985, and the Trustee filed his answer and counterclaim on September 27, 1985. Pursuant to a motion for voluntary dismissal without prejudice filed on November 1, 1985 by ALS, the Court entered an Order on December 4, 1985, dismissing this adversary proceeding against James Harward and Holiday Homes of Georgia, Inc.

The adversary proceeding is presently before the Court on two motions to dismiss filed by the Lamberts on September 13, 1985, and on cross-motions for summary judgment filed by ALS and the Lamberts on November 1, 1985. The motion to dismiss filed by Jennifer Lambert states that the complaint improperly names Jennifer Lambert instead of Sharon Lambert (Jennifer's mother). On November 1, 1985, ALS filed an amendment to its complaint to add the words "Sharon Lambert as Guardian of" before the words "Jennifer L. Lambert" wherever they appear in the complaint. The Court finds that this amendment remedies whatever defect existed in that respect in the complaint.

The motion to dismiss filed by Sharon Lambert and the cross-motions for summary judgment involve the same issues; therefore, this Order will apply to both Sharon Lambert's motion to dismiss and the cross-motions for summary judgment. With respect to the motions for summary judgment, both parties filed response briefs

on November 12, 1985, and reply briefs on November 18, 1985. The Trustee, asserting that the "adversary proceeding raises a critical issue," filed a brief in his capacity as an officer of the Court on November 18, 1985 in support of ALS' motion for summary judgment.

The issue to which the Trustee refers is the issue of whether the sale by the Trustee to ALS, pursuant to 11 U.S.C. § 363(f), of assets used in the manufacture of an allegedly defective mobile home ("Mobile Home") precludes the application of the successor doctrine in the product liability suit filed by the Lamberts against ALS in the Superior Court of Chatham County, Georgia ("Superior Court"). Before reaching that issue, the Court must decide whether the denial of ALS' motion for summary judgment in the Superior Court has any preclusive effect on this adversary proceeding under the doctrines of *res judicata* and collateral estoppel.

### FINDINGS OF FACT

In May of 1982, the Lamberts purchased the Mobile Home manufactured by All American. All American filed its petition for relief under Chapter 11 of the Bankruptcy Code on August 18, 1983. The Lamberts filed a complaint in September of 1983 in the Superior Court against two corporations allegedly involved in the manufacture of the Mobile Home, Georgia Pacific Corporation and Weyerhauser Company. In that lawsuit, the Lamberts seek to recover damages based on product liability. When the Lamberts initiated the lawsuit, they were aware of All American's pending Chapter 11 case, but did not file a proof of claim.

This Court entered Orders on May 18, 1984 and February 5, 1985 authorizing sales by the Trustee to ALS pursuant to 11 U.S.C. § 363(f) of improved real estate, machinery, equipment and other property previously used by All American in the manufacture of mobile homes. On October 18, 1984, the Superior Court granted the Lamberts' motion to add ALS as a defendant in the pending lawsuit. The Superior Court denied ALS' motion for summary judgment on July 10, 1985. ALS' application for interlocutory appeal from the Superior Court's Order was denied by the Court of Appeals of the State of Georgia on August 13, 1985.

### CONCLUSIONS OF LAW

 The Bankruptcy Court, like other federal courts, must apply the doctrines of *res judicata* and collateral estoppel to state court proceedings in accordance with the principles of "full faith and credit" set out in 28 U.S.C. § 1738. *Bend v. Eadie (In re Eadie)*, 51 Bankr. 890, 892 (Bankr.E.D. Mich.1985); *Harris v. Byard (In re Byard)*, 47 Bankr. 700, 701 (Bankr.E.D. Tenn.1985). The application of that statute involves two steps. First, the Bankruptcy Court must determine the preclusive effect of the state court's findings in accordance with the laws of that state. *Byard*, 47 Bankr. at 705–706. Then the Bankruptcy Court must decide whether any federal statute expressly or impliedly prevents the Bankruptcy Court from applying this same preclusive effect. *Id.* at 706.

Under Georgia law, *res judicata* and collateral estoppel apply only to decisions which are final. *Cable Holdings of Battlefield, Inc. v. Cooke*, 764 F.2d 1466, 1473 (11th Cir.1985) (*res judicata*); *Gresham Park Community Organization v. Howell*, 652 F.2d 1227, 1242 (5th Cir.1981) (collateral estoppel). The Georgia courts have consistently held that the denial of a motion for summary judgment is not a final decision. *Weldon v. Southeastern Fidelity Insurance Co.*, 157 Ga.App. 698, 278 S.E.2d 500 (1981); *Giordano v. Stubbs*, 129 Ga.App. 283, 285, 199 S.E.2d 322, 324 (1973). In fact, the Georgia Supreme Court has refused to give preclusive effect to an order *granting* a motion for summary judgment with respect to fewer than all of the parties. *Culwell v. Lomas & Nettleton Co.*, 242 Ga. 242, 243, 248 S.E.2d 641, 642 (1978).

 Based on these authorities, neither *res judicata* nor collateral estoppel apply to the Superior Court's denial of ALS' mo-

tion for summary judgment. Since the Court is not aware of any federal statute which expressly or impliedly authorizes the Court to accord preclusive effect to the denial of ALS' motion for summary judgment, the Court will now consider the merits of this adversary proceeding.

ALS' complaint requests that this Court grant declaratory and injunctive relief to prevent the Lamberts from prosecuting their product liability suit against ALS in the Superior Court. The complaint alternatively requests that if the Court allows the Lamberts to continue the product liability action, then the Court should rescind ALS' purchases of assets from the Trustee, on the grounds that the sales were the product of a mutual mistake by both ALS and the Trustee. ALS also requests attorney's fees for the costs of bringing this action.

■ The Court has not found a case directly addressing the issue of whether a sale, free and clear of all claims pursuant to 11 U.S.C. § 363(f), of assets used in the manufacture of an allegedly defective product precludes the application of the successor doctrine in a product liability suit filed against a purchaser of those assets, when the product liability cause of action arose prior to the date of the sale.

The Lamberts urge the Court to rely on the holding in *Mooney Aircraft Corp. v. Foster (In re Mooney Aircraft, Inc.)*, 730 F.2d 367 (5th Cir.1984). In *Mooney*, two families filed product liability suits in a California Superior Court under the successor doctrine against a purchaser of the assets used to manufacture an allegedly defective airplane. *Id.* at 371. The families' cause of action arose out of an accident resulting from the airplane's loss of a wing. *Id.* The accident occurred several years after the bankrupt manufacturer of the airplane had sold its assets in a bankruptcy sale. *Id.* In finding that the Bankruptcy Court lacked jurisdiction to enjoin the families' product liability suit in the Superior Court, the Fifth Circuit Court of Appeals stated:

> The [families] did not even have a claim at the time of the bankruptcy court's

order of sale. There was no property right to be deprived; by the same token, there was no claim to be divested.

*Id.* at 375 (footnotes omitted). It follows that the Fifth Circuit only held that a sale free and clear of claims cannot divest a product liability suit which arises after the sale.

In the case *sub judice*, the Lamberts' cause of action necessarily arose prior to the filing of their complaint in the Superior Court in September of 1983. This Court entered the Orders approving the sales to ALS in May of 1984 and February of 1985. Since the holding in *Mooney* applies only to cases in which a product liability cause of action arises after the § 363 sale, *Mooney* is inapplicable to the case at bar.

In a case analogous to *Mooney*, the Court of Appeals for the Third Circuit held that a discharge in bankruptcy does not discharge a product liability claim, when the claimant does not have a sustainable cause of action at the time of the discharge. *Schweitzer v. Consolidated Rail Corp. (Conrail)*, 758 F.2d 936, 942 (3d Cir. 1985). *Cf. In re UNR Industries, Inc.*, 29 Bankr. 741, 745 (N.D.Ill.1983). This holding reinforces the conclusion that the finding in *Mooney* was based entirely on the fact that the product liability cause of action did not exist at the time of the sale. In fact, the Court in *Schweitzer* stated that a cause of action in tort is a "claim." *Schweitzer* 758 F.2d at 941. Since the Lamberts' cause of action, as evidenced by their lawsuit in the Superior Court, existed prior to the sale of assets to ALS, the sale was free and clear of the Lamberts' product liability cause of action.

This holding does not dispose of the issue of whether the sale free and clear precludes the application of the successor doctrine to the Lamberts' product liability cause of action. On this point, ALS argues that the Court should apply the reasoning set forth in *Forde v. Kee-Lox Manufacturing Co., Inc.*, 437 F.Supp. 631 (W.D.N.Y. 1977), *aff'd on other grounds*, 584 F.2d 4 (2d Cir.1978), and *Rubinstein v. Alaska Pacific Consortium (In re New England*

*Fish Co.),* 19 Bankr. 323 (Bankr.W.D.Wash. 1982). In these cases, the courts held that a sale of the debtor's assets, approved by the Bankruptcy Court as free and clear of all claims, precludes the application of the successor doctrine against a purchaser of those assets in a suit based on the debtor's alleged employment discrimination and violations of employees' civil rights.

The *Forde* case sets out two policies against allowing successor liability to follow bankruptcy sales. The first is that if a plaintiff asserts a claim grounded on successor liability after a bankruptcy sale, he, in effect, receives a priority over those claims which were paid in accordance with the Bankruptcy Code. *Forde,* 437 F.Supp. at 633. The result is that successor liability theory would rearrange the priority scheme established by the Bankruptcy Code. *Id.* The other reason is the negative impact that potential successor liability claims would have on the trustee's ability to sell assets of the estate at a fair price. *Id.* at 633–634.

The Bankruptcy Court in *Rubinstein* also applied these two principles. In doing so, the Court relied on the mandate of the United States Supreme Court in *Nathanson v. National Labor Relations Board,* 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952), that "[t]he theme of the Bankruptcy Act is 'equality of distribution' (*Sampsell v. Imperial Paper Corp.,* 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293); and if one claimant is to be preferred over others, the purpose should be clear from the statute." *Rubinstein,* 19 Bankr. at 326. The Court in *Rubinstein* further observed that "the successor doctrine is not a Congressional enactment, nor does the legislative history to any statute state or, in our view, suggest such a doctrine." *Id.* at 328. Finding no suggestion that Congress intended to allow the successor doctrine to rearrange the priority of distribution established by the Bankruptcy Code, the Court held that the Supreme Court holding in *Nathanson* must prevail over the policies in favor of allowing successor liability in civil rights cases. *Id.*

This reasoning applies in the case at bar. There is no suggestion of Congressional intent to apply the successor doctrine to elevate product liability claims above their status under the Bankruptcy Code. In fact, the product liability cause of action asserted by the Lamberts arises out of state law, O.C.G.A. § 51–1–11, whereas the civil rights claims in *Rubinstein* are based on statutes passed by Congress, *Rubinstein,* 19 Bankr. at 324. For these reasons, the Court finds that the sale of assets to ALS free and clear of all claims precludes the application of the successor doctrine in the Lamberts' product liability suit against ALS.

The Lamberts contend that the bankruptcy sale should not be free and clear of their claim, because they received no notice of the sale. With respect to the notice requirement, the Lamberts direct the Court's attention to the cases of *Mooney, supra,* and *Whitehead & Kales Co. v. Dempster (In re Wiltse Brothers Corp.),* 361 F.2d 295 (6th Cir.1966). The Court in *Mooney* did not reach the issue of whether notice is required for a sale under § 363 to divest tort claims. *Mooney,* 730 F.2d at 375. The Court noted, however, "that a sale free and clear is ineffective to divest the claim of a creditor who did not receive notice." *Id.* One of the cases relied on for this proposition was the *Whitehead* case cited above.

In that case, the Court observed that although the creditor may have been without formal notice, he did have actual notice of the sale. *Whitehead,* 361 F.2d at 298. The *Whitehead* Court stated that the issue of notice was not properly before it, since there was no appeal from or motion to set aside the sale. *Id.* Similarly, this Court finds that its Orders approving the sales of assets to ALS are final and not subject to collateral attack. *See Dooley v. Weil (In re Garfinkle),* 672 F.2d 1340, 1348 (11th Cir.1982).

■ This Court will, however, consider the issue of notice to the Lamberts to the extent that it may be relevant to the application of the successor doctrine. It is admitted that the Lamberts were aware of

All American's Chapter 11 case when they filed their product liability suit in the Superior Court. Despite their knowledge of the bankruptcy case, the Lamberts elected not to file a proof of claim against All American's estate. It was this failure on the part of the Lamberts to file and otherwise pursue their claim that ultimately prevented them from receiving formal notice of the sale under Bankr.R. 2002. Since the lack of formal notice of the sale to the Lamberts resulted from their decision to file a lawsuit in the Superior Court and add ALS rather than file and pursue a claim against All American's estate, the Court finds that the absence of formal notice to the Lamberts is outweighed by the policies in favor of preserving the integrity of the priority system established by the Bankruptcy Code.

In order to protect the validity of a Bankruptcy Court's Orders directing that a sale of property is free and clear of claims, injunctive relief is appropriate. *Jacksonville Blow Pipe Co. v. Reconstruction Finance Corp.*, 244 F.2d 394 (5th Cir.1957). *See also Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 868 (5th Cir. 1984) (jurisdiction to protect orders approving the sale of assets free and clear of claims). On that basis, the Lamberts will be permanently enjoined from further prosecuting their product liability suit against ALS in the Superior Court.

Since the Court has found in favor of granting declaratory and injunctive relief to ALS, the Court need not address ALS' arguments in favor of rescinding the sales. The requests for attorney's fees by ALS in its complaint and by the Trustee in his counterclaim are both without merit.

Accordingly, it is ORDERED that:

(1) this Court's Orders entered on May 18, 1984 and February 5, 1985, authorizing the Trustee's sale of assets to ALS, preclude the Lamberts from recovering from ALS under the successor doctrine in their product liability suit now pending in the Superior Court;

(2) the Lamberts are permanently enjoined from prosecuting their product liability suit against ALS in the Superior Court;

(3) the requests for attorney's fees in ALS' complaint and in the Trustee's counterclaim are DENIED;

(4) the Lamberts' two motions to dismiss filed in this adversary proceeding on September 13, 1985 are DENIED.