## In re H.K. PORTER COMPANY, Debtor.

### Bankruptcy No. 91–468PGH.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 7, 1993.

---

Philip E. Beard, George T. Snyder, Philip E. Beard, II, Frederick J. Francis, Pittsburgh, PA, for debtor.

Douglas A. Campbell, David P. Braun, Pittsburgh, PA, for the Official Committee of Unsecured Creditors.

Gene Locks, Jonathan W. Miller, Philadelphia, PA and Charles F. Vihon, Chicago, IL, for various individual objectors.

Mark D. Plevin, Washington, DC, for Insurance Co. of North America and Central Nat. Ins. Co. of Omaha.

Samuel C. Batsell, Washington, DC, for Pension Benefit Guaranty Corp.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

H.K. Porter Company ("Debtor" or "Porter") filed its voluntary Petition under Chapter 11 of the Bankruptcy Code on February 15, 1991 (the "Filing Date"). Porter ceased its business operations prior to the bankruptcy filing. The avowed purpose of the bankruptcy was to stay the flood of asbestos-related personal injury and property damage lawsuits against Porter to enable Porter to liquidate its assets and dis-

tribute the proceeds to its creditors, most of whom are asbestos-related claimants.

Presently before the Court for approval is the First Amended Disclosure Statement filed by the Official Committee of Unsecured Creditors ("Committee"), which relates to the First Amended Creditors' Committee Plan of Reorganization. The Pension Benefit Guaranty Corporation, Insurance Company of North America, Central National Insurance Company of Omaha, and various individuals represented by Gene Locks, Esq. and Charles F. Vihon, Esq. filed objections to the First Amended Disclosure Statement.

Subsequently, the Committee filed its First Amended Disclosure Statement with modifications through April 1, 1993 ("Disclosure Statement") which satisfied each of the objections except that of the individuals represented by Locks and Vihon ("Objectors").

The Objectors raise objections to the Disclosure Statement which are based on the asserted non-confirmability of the Committee's proposed plan of reorganization[1] and on the assertion that the Disclosure Statement does not contain adequate information.

After careful consideration of the pleadings and briefs and after hearing the arguments of counsel, we determine that the proposed plan is non-confirmable as it fails to provide for claimants who will manifest an asbestos-related disease prior to the time that the Debtor's estate will be fully distributed. Those individuals who manifest the disease after the date of bankruptcy but prior to distribution of the Debtor's estate will be entitled to file a late proof of claim which would be allowable on the grounds of excusable neglect. *Pioneer Investment Services v. Brunswick Associates LP,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

The Committee's proposed plan makes no provision for accommodating such claims and therefore cannot be confirmed because it is not fair and equitable and the plan is

---

**1.** The Objectors correctly posit that it would be a waste of the Court's resources and of the estate's assets to allow a plan which is noncon-

firmable on its face to proceed through the confirmation process.

not feasible as written. Accordingly, we will refuse to approve the Disclosure Statement.

The real problem is whether there should be a reserve fund for those individuals who manifest an injury after an otherwise "final" distribution. We will direct the United States Trustee to appoint a person to serve as "futures" representative who will represent those individuals who will manifest an asbestos-related disease after an otherwise "final" distribution.[2]

## Discussion

It may take many years after exposure before asbestos disease is manifested. Some individuals who were at one time exposed to Porter's asbestos products have manifested an illness since the commencement of the within case and other individuals exposed to Porter's products can be expected to manifest an asbestos-related illness in the future. In the Disclosure Statement, the Committee acknowledges that its consultants have suggested that the number of persons who have or will manifest an asbestos-related disease after the Filing Date ("Future Claimants") will exceed the number of claims presently filed or scheduled in this case.

The Committee asserts that Future Claimants have no claim against the Debtor; that Future Claimants are entitled to no distribution from the estate and that any right to recovery is purely speculative. The Committee also asserts that the amount that will be available for distribution also mitigates against providing any distribution for Future Claimants.

■ The Committee (the proponent of the Disclosure Statement and Plan) has a fiduciary duty solely to the pre-petition creditors whose interest is diametrically opposed to that of the Future Claimants. The Committee proposes to eliminate all postpetition claimants from receiving any distribution out of the estate. We think a good argument can be made that at least those Future Claimants who have manifested a disease prior to the final distribution of the Debtor's assets (which, in this case, may take years) are entitled to share in the estate. Once a Future Claimant manifests a disease, he has suffered an actual loss or damage sufficient to sustain a claim against the Debtor. *See Schweitzer v. Consolidated Rail Corp. (Conrail)*, 758 F.2d 936 (3d Cir.1985). Even though the bar date fixed for filing proofs of claim in this case has passed, the certain claimants can file late proofs of claim. With the recent adoption by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates LP*, —— U.S. ——, 113 S.Ct. 1489 of a balancing test for determining whether the reason for a failure to timely file a proof of claim constitutes excusable neglect, it is likely that a claimant who files a late proof of claim because his asbestos disease manifested postpetition would be entitled to distribution on the claim since the late filing is clearly excusable.

We need not decide at this time whether or not those individuals who will manifest an injury after a final distribution of the Debtor's assets ("Futures") have a cognizable claim against this Debtor. We do not believe that all of the arguments in favor of the allowance of such claims are presently before the Court.

■ While the status of claims of the Futures is not as clear, it is clear that the Committee plans a liquidation of all of the Debtor's assets and a distribution of the proceeds of the liquidation to the asbestos claimants. Once the Debtor's assets are distributed, Futures will have no source of compensation for their injuries. We, therefore, conclude that the Futures require a

---

2. In our prior Order, we did not refuse to appoint a "futures" representative. We merely determined that Gene Locks, Esq. was an inappropriate party to bring the motion because, as a member of the Committee, his fiduciary duty was to represent prepetition creditors. *In re Amatex Corp.*, 755 F.2d 1034 (3d Cir.1985). We remain troubled over Mr. Locks' apparent conflict in representing both prepetition and future claimants and his cavalier approach to such conflict, but determine that the proposed plan itself raises the issues and that it is appropriate to appoint a futures' representative to represent future claimants. Mr. Locks and Mr. Vihon have conceded their ineligibility for such appointment.

voice in these proceedings. *See In re Amatex Corp.*, 755 F.2d 1034 (3d Cir.1985); *In re Forty–Eight Insulations, Inc.*, 58 B.R. 476 (Bankr.N.D.Ill.1986); *In re Johns–Manville Corp.*, 36 B.R. 743 (Bankr. S.D.N.Y.1984); *In re UNR Industries, Inc.*, 46 B.R. 671 (Bankr.N.D.Ill.1985).

An appropriate Order will be entered refusing approval of the Disclosure Statement and directing the United States Trustee to select, after consultation with the Debtor, the Committee and the objectors, a qualified individual to serve as legal representative of the Futures. Since those individuals who manifest an injury prior to a "final" distribution are entitled to a distribution under a confirmable plan, the Futures' representative will represent only those individuals who will manifest an injury subsequent to an otherwise "final" distribution of the Debtor's assets.